**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:                                          CHAPTER 11

**SOUTHERN PRODUCE DISTRIBUTORS, INC.**          CASE NO. 18-02010-5-SWH

      DEBTOR.

**DEBTOR'S EMERGENCY MOTION (i) FOR AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (ii) FOR TURNOVER TO THE DEBTOR OF PRE-PETITION AND POST-PETITION FUNDS PREVIOUSLY DEPOSITED OR TO BE DEPOSITED IN THE LOCKBOX ACCOUNT CURRENTLY MAINTAINED WITH WELLS FARGO BANK, and (iii) TO ESTABLISH A POST-PETITION PROCEDURE FOR CUSTOMER PAYMENTS**

NOW COMES SOUTHERN PRODUCE DISTRIBUTORS, INC., Debtor-in-Possession ("Debtor"), by and through the undersigned counsel, pursuant to 11 U.S.C. §§ 363 and 542, and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and moves the Court for an order (i) authorizing it to use cash collateral, (ii) directing the turnover of pre-petition and post-petition funds deposited into a lockbox account currently maintained at Wells Fargo Bank, and (iii) establishing a procedure for the Debtor's receipt of post-petition customer payments. In light of the emergency nature of this Motion, the Debtor requests a preliminary hearing on such use of cash collateral pursuant to Rule 4001(b)(2) of the Bankruptcy Rules. In support of this Emergency Motion, the Debtor respectfully represents:

**CONCISE STATEMENT OF RELIEF REQUESTED FOR USE OF CASH COLLATERAL PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The Debtor is a broker, packer and shipper of produce.

3.      The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on April 20, 2018 ("Petition Date").  It continues in possession of its property and continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1108 and 1108.

4.      The relief requested herein includes authorization for the Debtor's immediate use of cash collateral on an emergency basis for its continued business operations.

5.      The entities that appear to have a secured interest in the Debtor's cash collateral are (i) Ares Management L.P. (hereinafter "Ares"), as successor in interest to FCC, LLC d/b/a First Capital Western Region, LLC, and (ii) Byline Bank (hereinafter "Byline"), as successor in interest to Ridgestone Bank, a Wisconsin banking corporation.

6.      The Debtor proposes to use its cash collateral for its continued business operations. The budget attached hereto as **Exhibit A** is the Debtor's proposed budget for its continued business operations (hereinafter "Cash Collateral Budget").[1]  The Debtor's use of cash collateral will be in accordance with the proposed Cash Collateral Budget and all additional terms approved by the Court in its order allowing use of cash collateral, including all allowed variances to the itemized expenses identified in the Cash Collateral Budget.  Pursuant to Bankruptcy Rule 4001(b)(1)(A), a proposed order allowing the Emergency Motion, which includes authorization for the Debtor's use of cash collateral, is attached hereto as **Exhibit B**.

7.      The apparent interests of Ares and Byline in the Debtor's cash collateral will be adequately protected because, as explained in more detail herein, both Ares and Byline have a significant equity cushion in the collateral securing their respective loans, and the Debtor will grant Ares and Byline replacement liens and security interests in all property, including post-

---

[1] The income identified in the Cash Collateral Budget is solely for illustration purposes relating to this Emergency Motion and for the Debtor's immediate use of cash collateral.

petition accounts receivables and inventory, to the same extent, validity and priority as Ares held prior to the Petition Date on the Ares Indebtedness (as hereinafter defined) and as Byline held prior to the Petition Date on the Byline Indebtedness (as hereinafter defined).  Additionally, the Debtor does not project that its operation will materially reduce the existing collateral position of Ares and Byline.

### AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363

8.     The Debtor anticipates a continued operation of its business with this reorganization, and the continued operation of the Debtor's business is dependent upon its ability to pay wages to its employees and to pay other costs associated with its business operations.  The Debtor's estate will suffer immediate and irreparable harm to its operations and ability to reorganize if the Debtor is unable to obtain authority to use cash collateral on an emergency basis.  Therefore, the Debtor requests an Order authorizing it to immediately use cash collateral for its continued business operations.

### Ares Secured Indebtedness

9.     It appears that the Debtor is indebted to Ares pursuant to: (i) that certain Loan and Security Agreement dated October 11, 2013, by and between the Debtor and FCC, LLC, d/b/a First Capital Western Region, LLC, as subsequently amended (the "Ares Revolving Loan."); and (ii) that certain loan agreement dated July 5, 2016, by and between the Debtor and ACF FINCO I LP, a Delaware limited partnership (the "2016 Ares Loan").   As of the Petition Date, the outstanding loan balance owed by the Debtor to Ares on the Ares Revolving Loan was $7,633,770.00, and the outstanding loan balance owed to Ares on the 2016 Ares Loan was $186,079.00, for a total indebtedness to Ares of $7,819,849.00.  The total indebtedness owed by the Debtor to Ares as of the Petition Date, amounting to $7,819,849.00, is collectively referred to

hereinafter as the "Ares Indebtedness."  It appears that as security for the Ares Indebtedness, Ares holds a perfected, first priority security interest in most of the Debtor's personal property (hereinafter "Debtor's Personal Property"), including, without limitation, all of Debtor's accounts receivables, inventory, general intangibles, machinery, equipment, and proceeds of the same.  It also appears that, pursuant to a Deed of Trust recorded in Book 28425, Page 831, Palm Beach County, Florida, Registry, the Ares Indebtedness is secured by a first priority, perfected security interest in real property owned by the Estate of David Stewart Precythe and located at 400 S US Hwy, #504, Jupiter, Florida (hereinafter "Jupiter Property").   Upon information and belief, the realizable value of the Debtor's Personal Property approximates at least $16,960,595.00 and the realizable value of the Jupiter Property approximates at least $1,400,000.00.  The total realizable value of the property securing the Ares Indebtedness approximates at least $18,360,595.00.

**Byline Secured Indebtedness**

10.     It appears that the Debtor is indebted to Byline pursuant to: (i) that certain Loan Agreement dated January 14, 2016, by and between the Debtor and Ridgestone Bank (hereinafter the "2016 Byline Loan"); and (ii) that certain Loan Agreement dated June 1, 2011 by and between the Debtor and Ridgestone Bank (hereinafter the "2011 Byline Loan").  As of the Petition Date, the outstanding loan balance owed by the Debtor to Byline on the 2016 Byline Loan was $4,297,721.00, and the outstanding loan balance owed on the 2011 Byline Loan was $2,453,411.00, for a total indebtedness to Byline of $6,751,132.00.  The total indebtedness owed by the Debtor to Byline as of the Petition Date, amounting to $6,751,132.00, is collectively referred to hereinafter as the "Byline Indebtedness."  It appears that as security for the Byline Indebtedness, Byline holds a perfected, second priority security interest in the Debtor's Personal

Property, including, without limitation, all of Debtor's accounts receivables, inventory, general intangibles, machinery, equipment, and proceeds of the same. It also appears that the Byline Indebtedness is secured by: (i) a perfected, first priority security interest in approximately 10 acres of real property owned by the Debtor and located at 2434 N. NC 50 & 403, Faison, North Carolina 28341 (Deed of Trust, Book 1815, Page 723, Duplin County); (ii) a perfected, first priority security interest in approximately 154 acres of real property located on Spencer Road, Sampson County (Deed of Trust, Book 1935, Page 384, Sampson County Registry); (iii) a perfected, first priority security interest in approximately 20 acres of real property located at 214 Armory Road, Clinton, Sampson County (Deed of Trust, Book 1953, Page 115, Sampson County Registry); (iv) a perfected, first priority security interest in $1,200,000.00 of life insurance proceeds on David Stewart Precythe, currently being held in escrow by Byline; and (v) a perfected, first priority security interest in third-party real property having an approximate value of $3,000,000.00. Upon information and belief, the total realizable value of the property securing the Byline Indebtedness approximates at least $21,831,595.00 (exclusive of the third-party real property with an approximate value of $3,000,000.00).

**Priority of Ares and Byline Secured Status in Debtor's Personal Property**

11. It appears that Ares and Byline both have a perfected security interest in the Debtor's Personal Property. Pursuant to that certain Intercreditor Agreement dated January 14, 2016, by and between ACF Finco I LP, a Delaware limited partnership as success in interest to FCC, LLC, d/b/a First Capital Western Region, LLC and Ridgestone Bank, a Wisconsin banking corporation, it appears that Ares holds a first priority security interest in the Debtor's Personal Property and Byline holds a second priority security interest in such property.

## Cash Collateral Under 11 U.S.C. § 363

12.     Section 363(c) of the Bankruptcy Code provides that debtors may use cash collateral provided "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes use, sale, or lease in accordance with the provisions of this section."   11 U.S.C. § 363(c)(2).   Section 363(a) of the Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest…."   11 U.S.C. § 363(a).

13.     It appears that some of the Debtor's Personal Property, specifically its cash, accounts receivable, inventory and other cash equivalents generated from its business operations, may constitute "cash collateral" within the meaning of 11 U.S.C. §363(a) securing the Ares Indebtedness and the Byline Indebtedness.

## Debtor's Proposed Use of Cash Collateral

14.     The Debtor proposes to use its cash collateral in accordance with the Cash Collateral Budget attached hereto as Exhibit A and all additional terms approved by the Court in its order allowing use of cash collateral, including an allowed variance to the itemized expenses identified in the Cash Collateral Budget up to ten percent (10%) variance per item on a monthly basis.   The additional terms are set forth in greater detail in the proposed order allowing this Emergency Motion attached hereto at Exhibit B, and such terms are incorporated herein.

## Adequate Protection

15.     The secured positions of both Ares and Byline will be adequately protected because (i) both Ares and Byline have significant equity cushions in the collateral securing their respective loans and (ii) the Debtor proposes to grant Ares and Byline replacement liens and

security interests in all property, including post-petition accounts receivables and inventory, to the same extent, validity and priority as Ares held prior to the Petition Date on the Ares Indebtedness and as Byline held prior to the Petition Date on the Byline Indebtedness.

16.     The Debtor believes that the realizable value of the property securing the Ares Indebtedness, taking into account Ares's first priority secured status in the Debtor's Personal Property, constitutes a significant equity cushion over and above the outstanding balance owed Ares on the Ares Indebtedness.  Specifically, the Ares Indebtedness as of the Petition Date approximated $7,819,849.00.  The realizable value of the Debtor's Personal Property securing the Ares Indebtedness approximates at least $16,960,595.00, and the realizable value of the Jupiter Property securing the Ares Indebtedness approximates at least $1,400,000.00, for a total realizable property value of $18,360,595.00.  Taking into account the first priority secured status held by Ares in the Debtor's Personal Property, this amounts to an equity cushion securing the Ares Indebtedness of at least $10,540,746.00.  The interests of Ares are and will be adequately protected by this significant equity cushion in addition to the replacement liens and maintenance of appropriate insurance as referenced above.

17.     The Debtor believes the value of the property securing the Byline Indebtedness, taking into account Byline's second priority status in the Debtor's Personal Property, constitutes a significant equity cushion over and above the outstanding balance owed Byline.  Specifically, the Byline Indebtedness as of the Petition Date approximated $6,751,132.00.  The realizable value of the property securing the Byline Indebtedness approximates at least $21,831,595.00 (exclusive of the third-party real property with an approximate value of $3,000,000.00).  Taking into account the second priority secured status held by Byline in the Debtor's Personal Property, Byline's equity cushion in its collateral securing the Byline Indebtedness approximates

$7,260,614.00 (exclusive of the third-party real property with an approximate value of $2,500,000.00).[2] The interests of Byline on the Byline Indebtedness are and will be adequately protected by this significant equity cushion in addition to the replacement liens and maintenance of appropriate insurance as referenced above.

### TURNOVER OF PRE-PETITION AND POST-PETITION FUNDS DEPOSITED INTO WELLS FARGO LOCKBOX ACCOUNT AND ESTABLISHMENT OF POST-PETITION PROCEDURE FOR CUSTOMER PAYMENTS

18.    Pursuant to the terms of the Debtor's agreement with Ares, Ares has established a lockbox account held at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." (hereinafter the "Lockbox Account").

19.    As required by Ares, the Debtor's customers make payments due the Debtor directly into the Lockbox Account pursuant to a set of Payment Remittance Instructions. The Payment Remittance Instructions set forth how customer payments must be made directly into the Lockbox Account by check (sent by U.S. Mail and Courier/Express Mail) or wire/ACH transfer. Upon information and belief, funds from customer payments are deposited into the Lockbox Account every business day, with approximately 60% of the deposits made by electronic wire transfer. For example, during the month of March, 2018, there were approximately 78 deposits made into the Lockbox Account, of which 46 were made by electronic wire transfer.

---

[2] The $7,819,849.00 outstanding balance owed on the Ares Indebtedness, which is secured by a first priority perfected interest in the Debtor's Personal Property, reduces the equity in the Debtor's Personal Property to $9,140,746.00. This remaining equity is available to Byline as security for the Byline Indebtedness. The $21,831,595.00 in realizable property value securing the Byline Indebtedness includes the realizable value of the Debtor's Personal Property. Therefore, to calculate the Debtor's equity in the collateral securing Byline's Indebtedness, and taking into account Byline's second priority secured status in the Debtor's Personal Property, the Debtor deducted the amount of the Ares Indebtedness from the $21,831,595.00 in realizable property value securing Byline's Indebtedness. The calculation is as follows: $21,831,595.00 in realizable property value securing the Byline Indebtedness less the Ares Indebtedness amount of $7,819,849.00 based on its first priority status in the Debtor's Personal Property less the $6,751,132.00 Byline Indebtedness = $7,260,614.00 as an equity cushion available to Byline.

20.    Upon information and belief, the funds deposited into the Lockbox Account are electronically transferred via ACH transfer directly to the Debtor's bank account maintained at PNC Bank, account 3664, for use in Debtor's business operations.  Upon information and belief, funds from the Lockbox Account are transferred or eligible to be transferred to the Debtor's bank account maintained at PNC Bank every business day.

21.    Based on the frequency, amount and method of customer payments into the Lockbox Account, with the majority of transfers made by electronic wire transfer, it would be impractical, and potentially detrimental to the Debtor's business operations and its ability to reorganize, if customers were required to begin making payments directly into an account that is different from the Lockbox Account.  It is critical, however, to the Debtor's business operations and its ability to reorganize that the Debtor continue to receive the funds from the Lockbox Account on a daily basis.

22.    The Debtor, therefore, requests an order from the Court establishing a procedure for post-petition customer payments that allows the Debtor's customers to continue making deposits into the Lockbox Account in accordance with the established Payment Remittance Instructions and requires the funds that are deposited into the Lockbox Account to be electronically transferred on a daily basis to the Debtor-in-Possession bank account created and maintained by the Debtor.  The Debtor specifically requests that the Court order as follows:

a.    The Lockbox Account established at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall remain open and continue to be held in the name "ACF FinCo I LP FBO Southern Produce Distributors, Inc.";

b.      Any and all funds that were posted to and existing in the Lockbox Account as of the Petition Date, and any and all funds that had been deposited pre-petition but which posted on or after the Petition Date, shall immediately be turned over to the Debtor by electronic transfer directly into the Debtor-in-Possession account created and maintained by the Debtor;

c.      The Payment Remittance Instructions shall remain in effect and continue to apply post-petition, with the customer payments continuing to be made into the Lockbox Account in accordance with the Payment Remittance Instructions;

d.      Any and all payments and funds made and deposited into the Lockbox Account post-petition shall be electronically transferred every business day from the Lockbox Account to the Debtor-in-Possession account created and maintained by the Debtor, and the amount of funds transferred to the Debtor-in-Possession account each business day shall equal the amount of funds deposited and posted to the Lockbox Account on the immediately preceding business day;

e.      The person or party in whose name the Lockbox Account is held, which as of the date of this Emergency Motion is currently "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall be responsible for electronically transferring the Lockbox Account funds to the Debtor-in-Possession account in accordance with the terms herein;

f.      The procedure established for post-petition customer payments as provided herein shall continue to apply unless and until the Court orders otherwise.

## CONCLUSION

23.    The best interests of the Debtor, its creditors and the estate will be served by the allowance of this Emergency Motion.

WHEREFORE, the Debtor respectfully requests that this Court enter an order:

1.    Authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363 in accordance with the Cash Collateral Budget and terms approved by the Court; and

2.    Directs the turnover to the Debtor and its Debtor-in-Possession account of all pre-petition and post-petition funds deposited into the Lockbox Account; and

3.    Establishing a procedure for post-petition customer payments that (i) allows the Debtor's customers to continue making deposits into the Lockbox Account in accordance with the established Payment Remittance Instructions and (ii) requires the funds that are deposited into the Lockbox Account to be electronically transferred on a daily basis to the Debtor-in-Possession bank account created and maintained by the Debtor.   The specific procedure requested is as follows:

a.    The Lockbox Account established at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall remain open and continue to be held in the name "ACF FinCo I LP FBO Southern Produce Distributors, Inc.";

b.    Any and all funds that were posted to and existing in the Lockbox Account as of the Petition Date, and any and all funds that had been deposited pre-petition but which posted on or after the Petition Date, shall immediately be turned over to the Debtor by electronic transfer directly into the Debtor-in-Possession account created and maintained by the Debtor;

c. The Payment Remittance Instructions shall remain in effect and continue to apply post-petition, with the customer payments continuing to be made into the Lockbox Account in accordance with the Payment Remittance Instructions;

d. Any and all payments and funds made and deposited into the Lockbox Account post-petition shall be electronically transferred every business day from the Lockbox Account to the Debtor-in-Possession account created and maintained by the Debtor, and the amount of funds transferred to the Debtor-in-Possession account each business day shall equal the amount of funds deposited and posted to the Lockbox Account on the immediately preceding business day;

e. The person or party in whose name the Lockbox Account is held, which as of the date of this Emergency Motion is currently "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall be responsible for electronically transferring the Lockbox Account funds to the Debtor-in-Possession account in accordance with the terms herein;

f. The procedure established for post-petition customer payments as provided herein shall continue to apply unless and until the Court orders otherwise.

4. For such other and further relief that this Court deems just and proper.

Respectfully submitted this 20th day of April, 2018

> s/Gregory B. Crampton
> Gregory B. Crampton
> State Bar No. 991
> Kevin L. Sink
> State Bar No. 21041
> Steven C. Newton II
> State Bar No. 44656
> NICHOLLS & CRAMPTON, P.A.
> Post Office Box 18237
> Raleigh, North Carolina 27619
> Telephone: 919-781-1311
> Attorneys for Debtor

**EXHIBIT A**

| | | Wk 3 | Wk 4 | | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Cum | | | | Cum |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 21-Apr | 29-Apr | Apr | 5-May | 12-May | 19-May | 26-May | May | Jun-18 | Jul-18 | Aug-18 | Apr 15 - Aug 31 |

2018 SPD Budget P&L
For the Period of April 15, 2018 through Aug 31, 2018

| | | 21-Apr | 29-Apr | Apr | 5-May | 12-May | 19-May | 26-May | May | Jun-18 | Jul-18 | Aug-18 | Apr 15 - Aug 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | |
| Income | | | | | | | | | | | | | |
| 4001 | Sales - SWP | 502,096 | 575,924 | 1,078,019 | 718,818 | 737,973 | 527,013 | 604,667 | 2,588,471 | 2,420,967 | 2,269,191 | 2,566,651 | 10,923,301 |
| 4002 | Sales - Produce | - | - | - | 70,369 | 72,244 | 51,592 | 59,194 | 253,400 | 948,249 | 218,741 | 24,128 | 1,444,518 |
| 4003 | Sales - Processing Pepper | 49,386 | 56,648 | 106,034 | 33,436 | 34,327 | 24,514 | 28,127 | 120,405 | 593,557 | 547,571 | 723 | 1,368,291 |
| 4004 | Sales - Pkg Material | 939 | 1,078 | 2,017 | 1,822 | 1,870 | 1,336 | 1,532 | 6,560 | 6,387 | 5,977 | - | 20,941 |
| 4051 | Returns & Allowances - SWP | (2,636) | (3,024) | (5,660) | (13,721) | (14,087) | (10,060) | (11,542) | (49,411) | (154,882) | 3,321 | (74,069) | (280,701) |
| 4052 | Returns & Allowances - Produce | - | - | - | - | - | - | - | - | (9,553) | (8,205) | (9,612) | (27,371) |
| 4053 | Returns & Allowances - Pepper | - | - | - | - | - | - | - | - | (18) | (1,709) | (683) | (2,410) |
| | Total Income | 549,785 | 630,625 | 1,180,410 | 810,725 | 832,328 | 594,395 | 681,978 | 2,919,426 | 3,804,708 | 3,034,888 | 2,507,138 | 13,446,569 |
| **COGS** | | | | | | | | | | | | | |
| I | 5007 Purchases - Produce | - | - | - | 61,704 | 63,348 | 45,239 | 51,905 | 222,195 | 843,430 | 104,312 | - | 1,169,937 |
| I | 5008 Purchases - Pepper | 31,089 | 35,661 | 66,750 | 17,353 | 17,815 | 12,722 | 14,597 | 62,487 | 186,931 | 229,138 | - | 545,306 |
| I | 5050 COGS - SWP Raw | - | - | - | - | - | 8,165 | | 8,165 | 4,016 | 148,675 | 156,956 | 317,812 |
| I | 5055 COGS - SWP Packed | 306,516 | 351,586 | 658,101 | 444,107 | 455,941 | 325,604 | 373,581 | 1,599,233 | 1,517,436 | 1,255,500 | 1,420,626 | 6,450,896 |
| F | 5010.1 Freight & Trucking - SWP Domestic | 19,254 | 22,085 | 41,338 | 41,136 | 42,232 | 30,159 | 34,601 | 148,129 | 121,384 | 147,509 | 118,175 | 576,536 |
| F | 5010.2 Freight & Trucking - SWP Int'l | 36,324 | 41,665 | 77,988 | 74,762 | 76,755 | 54,813 | 62,890 | 269,220 | 226,133 | 90,501 | 81,875 | 745,718 |
| F | 5010.5 Freight & Trucking - Pepper | 4,333 | 4,970 | 9,303 | 6,062 | 6,224 | 4,445 | 5,100 | 21,831 | 59,812 | 57,617 | 367 | 148,930 |
| F | 5010.7 Freight & Trucking - WH to WH & Other | 7,269 | 8,338 | 15,608 | 5,602 | 5,751 | 4,107 | 4,712 | 20,172 | 22,298 | 12,129 | 27,887 | 98,094 |
| F | 5010.9 Fght - Allocated | (73,380) | (84,169) | (157,549) | (124,887) | (128,215) | (91,563) | (105,055) | (449,720) | (309,509) | (276,291) | (259,268) | (1,452,338) |
| L | 5020.2 Salary & Wages Packing - SWP | 53,931 | 61,862 | 115,793 | 75,585 | 77,599 | 55,416 | 63,581 | 272,181 | 264,864 | 285,460 | 302,503 | 1,240,801 |
| L | 5020.3 Salary & Wages Packing - Pepper | | | - | | | | | - | 3,401 | 77,837 | 135 | 81,373 |
| L | 5020.6 Salary & Wages - Farming | 3,622 | 4,155 | 7,777 | 4,636 | 4,759 | 3,399 | 3,899 | 16,693 | (69,753) | 37,798 | - | (7,486) |
| L | 5025.2 Contract Labor - Pepper | | | - | 2,705 | 2,777 | 1,983 | 2,276 | 9,742 | 47,233 | 20,678 | - | 77,652 |
| L | 5030 Labor Allocated - COGS | (29,813) | (34,197) | (64,011) | (101,185) | (103,881) | (74,185) | (85,116) | (364,368) | (236,748) | (230,148) | (284,156) | (1,179,431) |
| O | 5035 Employer PR Taxes | 6,872 | 7,882 | 14,754 | 7,727 | 7,932 | 5,665 | 6,500 | 27,823 | 28,600 | 27,062 | 33,218 | 131,459 |
| O | 5060 Inspections - SWP | - | - | - | | | | (33) | (33) | | 683 | 37 | 687 |
| O | 5230 Auto & Truck | 1,442 | 1,654 | 3,095 | 8,153 | 8,371 | 5,978 | 6,859 | 29,360 | 20,686 | 25,957 | 17,186 | 96,285 |
| O | 5250 Employee Medical | | | | | | 170 | 0 | 170 | | | 62 | 232 |
| O | 5360.1 Utilities - Elec & Water | | | - | 67,137 | | | (0) | 67,137 | 76,173 | 88,182 | 75,379 | 306,870 |
| O | 5360.2 Utilities - Garbage/Trash Removal | | | - | 2,715 | | | 0 | 2,715 | 678 | 4,084 | 4,139 | 11,616 |
| O | 5360.3 Utilities - Fuel | | | - | 4,665 | | | (0) | 4,665 | 5,893 | 5,248 | 6,255 | 22,061 |
| O | 5360.5 Utilities - Natural Gas | | | - | 74 | | | 0 | 74 | | 47 | 45 | 166 |
| O | 5360.7 Utilities - Propane | | | - | 2,181 | | | | 2,181 | 2,257 | 1,749 | 3,118 | 9,305 |
| O | 5390 Insurance | 3,011 | 3,453 | 6,464 | 4,458 | 4,577 | 3,269 | 3,750 | 16,054 | 12,734 | 22,860 | 21,744 | 79,856 |
| O | 5400 Employer 401-k Matching - Packing | 53 | 61 | 114 | 82 | 84 | 60 | 69 | 294 | 335 | 575 | 971 | 2,289 |
| O | 5630 Rent - Land | 213 | 244 | 457 | - | | - | | - | | | - | 457 |
| O | 5632 Rent - Storage | 13,373 | 15,339 | 28,712 | 24,175 | | | - | 24,175 | 77,466 | 105,826 | 27,951 | 264,130 |
| O | 5635 Equipment Lease/Rental | 8,136 | 9,332 | 17,469 | 14,397 | | 4,428 | 33,020 | 51,845 | 48,741 | 58,107 | 55,696 | 231,858 |
| O | 5660 Repairs & Maintenance | 15,627 | 17,925 | 33,552 | 21,280 | 21,847 | 15,602 | 17,901 | 76,629 | 15,385 | 75,240 | 56,338 | 257,143 |
| O | 5730 Supplies | 6,434 | 7,380 | 13,815 | 23,608 | 24,237 | 17,309 | 19,859 | 85,013 | 56,018 | 66,906 | 39,929 | 261,680 |
| O | 5732 Pallets | 1,676 | 1,922 | 3,598 | 1,257 | 1,291 | 922 | 1,058 | 4,527 | 7,593 | 11,381 | (249) | 26,850 |
| O | 5860 Property Taxes | 1,219 | 1,399 | 2,618 | 6,584 | | | - | 6,584 | 7,493 | 17,228 | 9,958 | 43,880 |
| O | 5950 Trucking | 9 | 10 | 20 | 7 | 7 | 5 | 6 | 24 | - | | 28 | 72 |
| | Total COGS | 417,209 | 478,556 | 895,765 | 696,078 | 589,450 | 425,545 | 524,124 | 2,235,197 | 3,040,979 | 2,471,850 | 1,916,905 | 10,560,695 |
| **Gross Profit** | | 132,576 | 152,070 | 284,645 | 114,646 | 242,879 | 168,850 | 157,854 | 684,229 | 763,729 | 563,037 | 590,233 | 2,885,874 |
| **Expenses** | | | | | | | | | | | | | |
| 7000 | Advertising | | | - | 660 | 678 | 484 | 555 | 2,378 | 7,460 | 4,305 | 1,674 | 15,818 |
| 7010 | Sales Commissions | | | - | 319 | 328 | 234 | 268 | 1,149 | 1,308 | 899 | 1,328 | 4,684 |
| 7020 | Brokerage | 943 | 1,082 | 2,025 | 1,135 | 1,166 | 832 | 955 | 4,088 | 4,967 | 3,997 | 4,786 | 19,864 |
| 7030 | Auto | 1,196 | 1,372 | 2,567 | 1,382 | 1,419 | 1,013 | 1,163 | 4,978 | 2,583 | 4,749 | 5,303 | 20,180 |
| 7125 | Bank Chgs | 3,217 | 3,690 | 6,908 | 1,994 | 2,047 | 1,462 | 1,678 | 7,182 | 20,182 | 14,083 | 6,537 | 54,892 |
| 7150 | Flowers & Gifts | - | - | - | 48 | 49 | 35 | 40 | 172 | 487 | 479 | 213 | 1,351 |
| 7170 | Contributions | | | - | - | | | - | - | 314 | 899 | 602 | 1,814 |
| 7240 | Dues & Subscriptions | 1,580 | 1,813 | 3,393 | 1,221 | 1,254 | 895 | 1,027 | 4,398 | 3,073 | 4,039 | 2,799 | 17,702 |
| 7255 | Emplyee Benefits | 712 | 816 | 1,528 | 1,328 | 1,364 | 974 | 1,117 | 4,783 | 4,491 | 4,965 | 8,226 | 23,993 |
| 7330 | General & Miscellaneous | 1,407 | 1,614 | 3,020 | 2,085 | 2,141 | 1,529 | 1,754 | 7,509 | 8,353 | 7,400 | 4,945 | 31,227 |
| 7340 | Professional Fees | 2,961 | 3,396 | 6,357 | 2,877 | 2,954 | 2,109 | 2,420 | 10,361 | 12,204 | 27,671 | 2,161 | 58,754 |
| 7380 | Insurance - Medical & Life | | | - | 14,759 | | | - | 14,759 | 14,873 | (74,784) | 1,841 | (43,311) |
| 7390 | Insurance - General | | | - | 14,208 | | | - | 14,208 | 16,196 | 16,892 | 19,197 | 66,494 |
| 7510 | Office Exp | 1,232 | 1,413 | 2,645 | 1,953 | 2,005 | 1,432 | 1,643 | 7,033 | 9,198 | 11,157 | 11,096 | 41,129 |
| 7610 | Rental Admin | | | - | | | | - | - | 2,092 | 1,198 | 1,063 | 4,354 |
| 7660 | Repairs & Maintenance | | | - | - | | | - | - | 173 | - | 868 | 1,041 |
| 7690 | Salaries & Wages | 25,528 | 29,281 | 54,809 | 29,358 | 29,733 | 28,590 | 30,640 | 118,321 | 125,426 | 136,541 | 107,624 | 542,721 |
| 7720 | Contract Labor | 146 | 167 | 313 | 269 | 276 | 197 | 226 | 968 | 857 | 606 | 861 | 3,604 |

**2018 SPD Budget P&L**

**For the Period of April 15, 2018 through Aug 31, 2018**

| | | Wk 3 | Wk 4 | Cum | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Cum | | | | Cum |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | 21-Apr | 29-Apr | Apr | 5-May | 12-May | 19-May | 26-May | May | Jun-18 | Jul-18 | Aug-18 | Apr 15 - Aug 31 |
| 7730 | Supplies Exp | - | - | - | - | | - | | - | | 1,880 | - | 1,880 |
| 7740 | Computer | 1,000 | 1,148 | 2,148 | 4,597 | - | 1,273 | 384 | 6,255 | 6,067 | 2,482 | 8,357 | 25,310 |
| 7750 | Telephone - Cell | 3,945 | | 3,945 | 1,358 | - | 1,072 | 2,833 | 5,263 | 6,295 | 3,214 | 5,454 | 24,172 |
| 7780.1 | T&E - Travel | 371 | 426 | 797 | 1,455 | 1,494 | 1,067 | 1,224 | 5,239 | 7,380 | 25,350 | 658 | 39,424 |
| 7780.3 | T&E - Meals & Ent Emp | 17 | 19 | 36 | 33 | 34 | 24 | 27 | 118 | 125 | 117 | 62 | 457 |
| 7780.4 | T&E Meals & Ent Non-Emp | - | - | - | 167 | 172 | 123 | 141 | 602 | 284 | 970 | 2,045 | 3,901 |
| 7800.2 | FICA - Employer | 1,918 | 2,200 | 4,118 | 2,259 | 2,319 | 1,656 | 1,900 | 8,135 | 9,474 | 10,373 | 10,412 | 42,512 |
| 7800.4 | FUTA - Employer | 4 | 5 | 8 | 4 | 4 | 3 | 4 | 16 | 3 | 24 | 58 | 109 |
| 7800.6 | SUTA NC - Employer | 133 | 153 | 286 | 117 | 120 | 85 | 98 | 420 | 312 | 205 | 243 | 1,465 |
| 7860 | Property Tax | | | | 234 | | | (0) | 234 | 400 | 530 | 200 | 1,363 |
| 7900 | Other Taxes & Licenses | - | - | - | 1,680 | | | 0 | 1,680 | - | 392 | 2,386 | 4,458 |
| 7910 | Fines & Penalties | - | - | - | - | - | - | - | - | - | - | 56 | 56 |
| | | | | | | | | | | | | | |
| | Total Expenses | 46,310 | 48,594 | 94,903 | 85,502 | 49,556 | 45,091 | 50,099 | 230,248 | 264,576 | 210,636 | 211,054 | 1,011,417 |
| | | | | | | | | | | | | | |
| Net Ordinary Income | | 86,266 | 103,476 | 189,742 | 29,144 | 193,323 | 123,759 | 107,755 | 453,981 | 499,154 | 352,401 | 379,179 | 1,874,457 |
| | | | | | | | | | | | | | |
| Other Income/Expenses | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Other Income | | | | | | | | | | | | | |
| 8020 | Rental Income | | | - | | | 1,292 | (0) | 1,292 | 1,203 | 1,378 | 1,222 | 5,096 |
| 8030 | Interest Income | | | - | | | | 3 | 3 | 3 | 3 | 3 | 11 |
| 8040 | Miscellaneous | 1,659 | 1,903 | 3,562 | 355 | 364 | 260 | 299 | 1,278 | 2,778 | 1,955 | 2,243 | 11,816 |
| | | | | | | | | | | | | | |
| | Total Other Income | 1,659 | 1,903 | 3,562 | 355 | 364 | 1,553 | 301 | 2,573 | 3,984 | 3,336 | 3,468 | 16,923 |
| | | | | | | | | | | | | | |
| Other Expenses | | | | | | | | | | | | | |
| 8043 | Barra Farm Exp | | | - | 1,896 | 1,947 | 1,390 | 1,595 | 6,829 | 6,297 | 1,270 | 15,756 | 30,150 |
| 8263 | Bankruptcy Fees - Court | 509 | 610 | 1,119 | 112 | 1,110 | 717 | 616 | 2,555 | 2,826 | 2,129 | 2,205 | 10,834 |
| 8410 | Loan SetUp Costs & Maint Fees | | | | 8,333 | | | - | 8,333 | 8,333 | 8,333 | 8,333 | 33,333 |
| 8660 | Repairs - Rental Property | - | - | - | - | - | | - | - | | 158 | - | 158 |
| | | | | | | | | | | | | | |
| | Total Other Expenses | 509 | 610 | 1,119 | 10,341 | 3,057 | 2,108 | 2,211 | 17,717 | 17,615 | 11,731 | 26,294 | 74,476 |
| | | | | | | | | | | | | | |
| Net Other Income/Expenses | | 1,150 | 1,293 | 2,443 | (9,986) | (2,692) | (555) | (1,910) | (15,144) | (13,631) | (8,395) | (22,826) | (57,553) |
| | | | | | | | | | | | | | |
| Net Income Before Taxes | | 87,416 | 104,769 | 192,185 | 19,158 | 190,631 | 123,204 | 105,845 | 438,837 | 485,523 | 344,006 | 356,353 | 1,816,904 |
| | | | | | | | | | | | | | |
| Income Tax: Estimated Federal | | 25,351 | 30,383 | 55,734 | 5,556 | 55,283 | 35,729 | 30,695 | 127,263 | 140,802 | 99,762 | 103,342 | 526,902 |
| Estimated NC State | | 4,371 | 5,238 | 9,609 | 958 | 9,532 | 6,160 | 5,292 | 21,942 | 24,276 | 17,200 | 17,818 | 90,845 |
| | | 29,721 | 35,621 | 65,343 | 6,514 | 64,814 | 41,889 | 35,987 | 149,205 | 165,078 | 116,962 | 121,160 | 617,747 |
| | | | | | | | | | | | | | |
| Net Income | | 57,695 | 69,147 | 126,842 | 12,644 | 125,816 | 81,315 | 69,858 | 289,633 | 320,445 | 227,044 | 235,193 | 1,199,156 |

**EXHIBIT B**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**                                              **CHAPTER 11**

**SOUTHERN PRODUCE DISTRIBUTORS, INC.**              **CASE NO. 18-02010-5-SWH**

      **DEBTOR.**

**INTERIM ORDER ALLOWING DEBTOR'S EMERGENCY MOTION (i) FOR**
**AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (ii)**
**FOR TURNOVER TO THE DEBTOR OF PRE-PETITION AND POST-PETITION**
**FUNDS PREVIOUSLY DEPOSITED OR TO BE DEPOSITED IN THE LOCKBOX**
**ACCOUNT CURRENTLY MAINTAINED WITH WELLS FARGO BANK, and (iii) TO**
**ESTABLISH A POST-PETITION PROCEDURE FOR CUSTOMER PAYMENTS**

**THIS CAUSE** was scheduled for hearing before the Court upon the "Emergency Motion

(i) for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (ii) for Turnover to the

Debtor of Pre-Petition and Post-Petition Funds Previously Deposited or to be Deposited in the

Lockbox Account Currently Maintained with Wells Fargo Bank, and (iii) to Establish a Post-

Petition Procedure for Customer Payments (the "Emergency Motion") filed by the Debtor on

April 20, 2018.  It appears to the Court that the terms and conditions set forth below are

reasonable and appropriate, are in the best interests of the bankruptcy estate and all creditors, and

should be approved.  It further appears to the Court that the notice of the Motion and which the

Debtor provided to creditors and parties in interest is adequate and proper.

**THEREFORE**, based upon the Debtor's Emergency Motion, and the record in this case,

the Court hereby makes the following FINDINGS OF FACT and CONCLUSIONS OF LAW:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The Debtor is a broker, packer and shipper of produce.

3.      The Debtor filed its voluntary petition for relief under Chapter 11 of the United

States Bankruptcy Code on April 20, 2018 ("Petition Date").  It continues in possession of its

property and continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§

1108 and 1108.

### Authorization for Debtor's Use of Cash Collateral

4.      The Debtor proposes to use its cash collateral for its continued business

operations. The budget attached hereto as **Exhibit A** is the Debtor's proposed budget for its

continued business operations (hereinafter "Cash Collateral Budget").  The income identified in the

Cash Collateral Budget was presented by the Debtor solely for illustration purposes relating to its

Emergency Motion and for the Debtor's immediate use of cash collateral.

5.      The Debtor states in its Emergency Motion that the entities which appear to have

a secured interest in the Debtor's "cash collateral" within the meaning of 11 U.S.C. § 363(a) are

(i) Ares Management L.P. (hereinafter "Ares"), as successor in interest to FCC, LLC d/b/a First

Capital Western Region, LLC, and (ii) Byline Bank (hereinafter "Byline"), as successor in

interest to Ridgestone Bank, a Wisconsin banking corporation.  For purposes of this Order and to

obtain authorization for immediate use of cash collateral, the Debtor acknowledges and does not

dispute the validity, priority, and enforceability of the security interests asserted by Ares or

Byline or the amounts due such creditors under the applicable loan documents; provided, however, that neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interests asserted by Ares or Byline in addition to the amounts due such creditors.

6.    Section 363(c) of the Bankruptcy Code provides that debtors may use cash collateral provided "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  Section 363(a) of the Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest…."  11 U.S.C. § 363(a).

7.    It appears that some of the Debtor's personal property ("Debtor's Personal Property"), specifically its cash, accounts receivable, inventory and other cash equivalents generated from its business operations, may constitute "cash collateral" of Ares and Byline within the meaning of 11 U.S.C. §363(a).  It appears that Ares and Byline are the only creditors that may have an interest in the Debtor's cash collateral.

8.    It appears that the Debtor is indebted to Ares, and as of the Petition Date the Debtor estimates that the total amount of indebtedness owed by it to Ares approximated $7,819,849.00 (hereinafter the "Ares Indebtedness").  It also appears that the Ares Indebtedness is secured by property with a realizable value approximating $18,360,595.00.

9.    It appears that the Debtor is indebted to Byline, and as of the Petition Date the Debtor estimates that the total indebtedness owed by it to Byline approximated $6,751,132.00 (hereinafter the "Byline Indebtedness").  It also appears that the Byline Indebtedness is secured

by property with a realizable value approximating $21,831,595.00 (exclusive of third-party real property identified in the Emergency Motion with an approximate value of $3,000,000.00).

10.    It appears that both Ares and Byline have significant equity cushions in the collateral securing their respective loans, even taking into account the security interests that both Ares and Byline appear to hold in the Debtor's Personal Property.

11.    The Debtor in its Emergency Motion also proposed to grant Ares and Byline replacement liens and security interests in all property, including post-petition accounts receivables and inventory, to the same extent, validity and priority as Ares held prior to the Petition Date on the Ares Indebtedness and as Byline held prior to the Petition Date on the Byline Indebtedness.  The Debtor also stated in its Emergency Motion that it does not project that its operations will materially reduce the existing collateral position of Ares and Byline.

12.    The secured positions of both Ares and Byline will be adequately protected notwithstanding the Debtor's use of its cash collateral because of the significant equity cushions available to Ares and Byline in the collateral securing their respective loans and with the Debtor granting Ares and Byline replacement liens and security interests in all property, including post-petition accounts receivables and inventory, to the same extent, validity and priority as Ares held prior to the Petition Date on the Ares Indebtedness and as Byline held prior to the Petition Date on the Byline Indebtedness.

13.    The Debtor anticipates a continued operation of its business with this reorganization, and the continued operation of the Debtor's business is dependent upon its ability to pay wages to its employees and to pay other costs associated with its business operations.  The Debtor's estate will suffer immediate and irreparable harm to its operations and ability to reorganize if the Debtor is unable to obtain authority to use cash collateral on an emergency

basis.  Therefore, the Debtor is authorized to use its cash collateral for its post-petition, necessary and reasonable business operating expenses in accordance with the Cash Collateral Budget attached to this Order as **Exhibit A** and the additional terms set forth in this Order.  The Debtor shall be required to receive written authorization from Ares and Byline for expenditures in excess of the budgeted amounts, except that the Debtor is authorized to exceed an individual line item by a maximum of 10% without prior approval.

14.     The requirements of Bankruptcy Rules and the Bankruptcy Code, including without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's use of cash collateral and for the provision of adequate protection to Ares and Byline upon the terms set forth in this Order.

### Turnover of Pre-Petition and Post-Petition Funds Held in Lockbox Account and Establishment of Procedure for Post-Petition Customer Payments

15.     As stated in the Emergency Motion, Ares has established a lockbox account held at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." (hereinafter the "Lockbox Account").

16.     The Debtor's customers make payments due the Debtor directly into the Lockbox Account pursuant to a set of Payment Remittance Instructions.  The Payment Remittance Instructions set forth how customer payments must be made directly into the Lockbox Account by check (sent by U.S. Mail and Courier/Express Mail) or wire/ACH transfer.  Upon information and belief, funds from customer payments are deposited into the Lockbox Account every business day, with approximately 60% of the deposits made by electronic wire transfer.

17.     The funds deposited into the Lockbox Account are electronically transferred via ACH transfer directly to the Debtor's bank account maintained at PNC Bank, account 3664, for use in Debtor's business operations.

18.    Based on the frequency, amount and method of customer payments into the Lockbox Account, with the majority of transfers made by electronic wire transfer, it would be impractical, and potentially detrimental to the Debtor's business operations and its ability to reorganize, if customers were required to begin making payments directly into an account that is different from the Lockbox Account.  It is critical, however, to the Debtor's business operations and its ability to reorganize that the Debtor continue to receive the funds from the Lockbox Account on a daily basis.

19.    Based on the foregoing, it will be in the interests of the Debtor, the creditors and the estate to allow the post-petition customer payment procedure requested in the Emergency Motion.  This procedure is as follows:

a.    The Lockbox Account established at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall remain open and continue to be held in the name "ACF FinCo I LP FBO Southern Produce Distributors, Inc.";

b.    Any and all funds that were posted to and existing in the Lockbox Account as of the Petition Date, and any and all funds that had been deposited pre-petition but which posted on or after the Petition Date, shall immediately be turned over to the Debtor by electronic transfer directly into the Debtor-in-Possession account created and maintained by the Debtor;

c.    The Payment Remittance Instructions shall remain in effect and continue to apply post-petition, with the customer payments continuing to be made into the Lockbox Account in accordance with the Payment Remittance Instructions;

d.      Any and all payments and funds made and deposited into the Lockbox Account post-petition shall be electronically transferred every business day from the Lockbox Account to the Debtor-in-Possession account created and maintained by the Debtor, and the amount of funds transferred to the Debtor-in-Possession account each business day shall equal the amount of funds deposited and posted to the Lockbox Account on the immediately preceding business day;

e.      The person or party in whose name the Lockbox Account is held, which as of the date of this Emergency Motion is currently "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall be responsible for electronically transferring the Lockbox Account funds to the Debtor-in-Possession account in accordance with the terms herein;

f.      The procedure established for post-petition customer payments as provided herein shall continue to apply unless and until the Court orders otherwise.

**WHEREFORE**, based upon the FINDINGS OF FACT and CONCLUSIONS OF LAW, the Court hereby **ORDERS**:

1.      Notwithstanding 11 U.S.C. § 552, Ares and Byline are granted post-petition replacement liens on the same assets to which their liens attached pre-petition, to the same extent, and with the same validity and priority as existed on the Petition Date.  The liens created hereunder shall be deemed perfected by the entry of this Order without further actions or filing by Ares or Byline.  The post-petition liens provider for herein shall survive the term of this Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the Petition Date.  The Debtor does not waive, and expressly reserves for itself and the bankruptcy estate (including other creditors and any Committee in this proceeding), the right to challenge the

validity and priority of the pre-petition liens of Ares and Byline and, derivatively, the post-petition liens provided for hereunder.

2.      The Debtor shall be and hereby is authorized to use its cash collateral for its post-petition, necessary and reasonable business operating expenses in accordance with the Cash Collateral Budget attached to this Order as **Exhibit A** and the additional terms set forth in this Order.  The Debtor shall be required to receive written authorization from Ares and Byline for expenditures in excess of the budgeted amounts, except that the Debtor is authorized to exceed an individual line item by a maximum of 10% without prior approval.

3.      The Debtor shall have the right to seek additional use of cash collateral beyond the stated terms of this Order.

4.      The Court also hereby orders the following procedure regarding pre-petition and post-petition customer payments into the Lockbox Account:

a.      The Lockbox Account established at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall remain open and continue to be held in the name "ACF FinCo I LP FBO Southern Produce Distributors, Inc.";

b.      Any and all funds that were posted to and existing in the Lockbox Account as of the Petition Date, and any and all funds that had been deposited pre-petition but which posted on or after the Petition Date, shall immediately be turned over to the Debtor by electronic transfer directly into the Debtor-in-Possession account created and maintained by the Debtor;

c.      The Payment Remittance Instructions shall remain in effect and continue to apply post-petition, with the customer payments continuing to be made into the Lockbox Account in accordance with the Payment Remittance Instructions;

d.      Any and all payments and funds made and deposited into the Lockbox Account post-petition shall be electronically transferred every business day from the Lockbox Account to the Debtor-in-Possession account created and maintained by the Debtor, and the amount of funds transferred to the Debtor-in-Possession account each business day shall equal the amount of funds deposited and posted to the Lockbox Account on the immediately preceding business day;

e.      The person or party in whose name the Lockbox Account is held, which as of the date of this Emergency Motion is currently "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall be responsible for electronically transferring the Lockbox Account funds to the Debtor-in-Possession account in accordance with the terms herein;

f.      The procedure established for post-petition customer payments as provided herein shall continue to apply unless and until the Court orders otherwise.

5.      The Debtor shall maintain one or more Debtor-in-Possession bank accounts, into which it will receive the funds transferred from the Lockbox Account and into which the Debtor will deposit all other cash, checks or other cash items received.

6.      Any party may seek further consideration of the relief granted in this Order or other cash collateral issues by filing a request with the Court; provided, however, that a hearing on any such request shall not occur less than three business days' notice to Ares, Byline, the Bankruptcy Administrator, the Debtor, and any Committee.

7.      The Debtor shall serve notice of this Order on all parties entitled to receive the same pursuant to Bankruptcy Rules 1007 and 4001.

8.      Unless additional agreement for the use of cash collateral is reached by the parties prior to _____, 2018, further hearing on this matter shall occur on _____, 2018, at _____ a.m./p.m. at the United States Bankruptcy Courthouse at _____.

END OF DOCUMENT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                          **CHAPTER 11**

**SOUTHERN PRODUCE DISTRIBUTORS, INC.**          **CASE NO. 18-02010-5-SWH**

    **DEBTOR.**

### NOTICE OF MOTION AND NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN** of the "Emergency Motion (i) for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (ii) for Turnover to the Debtor of Pre-Petition and Post-Petition Funds Previously Deposited or to be Deposited in the Lockbox Account Currently Maintained with Wells Fargo Bank, and (iii) to Establish a Post-Petition Procedure for Customer Payments (the "Emergency Motion") filed herewith by Nicholls & Crampton, P.A., attorneys for the Debtor, seeking an order from the Court (i) authorizing the Debtor's immediate use of cash collateral; (ii) directing the turnover to the Debtor of pre-petition and post-petition funds previously deposited or to be deposited in a lockbox account currently being maintained at Wells Fargo Bank; and (iii) establishing a procedure for post-petition customer payments.

**FURTHER NOTICE IS HEREBY GIVEN** that this Emergency Motion may be allowed provided no response and request for a hearing is made by the parties in interest in writing to the Clerk of this Court up to the time of the hearing on April 25, 2018; and

**FURTHER NOTICE IS HEREBY GIVEN** that a hearing will be conducted on the Emergency Motion and any response thereto on Wednesday, April 25, 2018, at 1:30 p.m. at the United States Bankruptcy Courthouse, 2nd Floor Courtroom, 300 Fayetteville Street, Raleigh, North Carolina.

DATE OF NOTICE: April 20, 2018

                                    *s/Gregory B. Crampton*
                                    Gregory B. Crampton
                                    State Bar No. 991
                                    Kevin L. Sink
                                    State Bar No. 21041
                                    Steven C. Newton II
                                    State Bar No. 44656
                                    NICHOLLS & CRAMPTON, P.A.
                                    Post Office Box 18237
                                    Raleigh, North Carolina 27619
                                    Telephone:  919-781-1311
                                    Attorneys for Debtor

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing **DEBTOR'S EMERGENCY MOTION <u>(i)</u> FOR AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, <u>(ii)</u> FOR TURNOVER TO THE DEBTOR OF PRE-PETITION AND POST-PETITION FUNDS PREVIOUSLY DEPOSITED OR TO BE DEPOSITED IN THE LOCKBOX ACCOUNT CURRENTLY MAINTAINED WITH WELLS FARGO BANK, and <u>(iii)</u> TO ESTABLISH A POST-PETITION PROCEDURE FOR CUSTOMER PAYMENTS** and **NOTICE OF MOTION AND NOTICE OF HEARING** were served on the parties listed below by placing a copy of the same in a depository under the exclusive care and custody of the United States Postal Service in a postage prepaid envelope or  by CM/ECF electronic email as indicated:

*VIA CM/ECF SERVICE ONLY*
Marjorie K. Lynch
Bankruptcy Administrator
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

Ares Management, successor to
FCC, LLC d/b/a First Capital
Attn: Officer or Managing Agent
800 Corporate Pointe, 4th Floor
Los Angeles, CA 90230

Byline Bank, successor
to Ridgestone Bank
Attn: Officer or Managing Agent
500 W. Elm Grove Road, Suite 104
Elm Grove, WI 53122

Blueview Farms
Attn: Managing Agent
122 Dairy Road
Dunn, NC 28334

D & T Farms Inc.
Attn: Managing Agent
8008 NC Hwy 96 S
Benson, NC 27504

Warren Farming Partnership
Attn: Managing Agent
PO Box 223
Newton Grove, NC 28366

Southern Produce Distributors, Inc.
Attn: Managing Agent
111 West Center Street North
Faison, NC 28341

Robert Fann Farming
Attn: Managing Agent
220 Oscar Tate Road
Salemburg, NC 28385


Bass Boyz Family Farm
Attn: Managing Agent
618 Emmett Jackson Road
Faison, NC 28341

Keith Smith
Attn: Managing Agent
2515 Lakewood Road
Four Oaks, NC 27524

Independent Container Line, LTD.
Attn: Managing Agent
5620 Cox Road
Glen Allen, VA 23060

CMS Farms
Attn: Managing Agent
Strickland Organics
891 Country Club Road
Salemburg, NC 28385

Dewitt Produce
Attn: Managing Agent
PO Box 129
Morven, GA 31638

Strickland Farming Partnership
Attn: Managing Agent
671 Hollingsworth Road
Mount Olive, NC 28365

Bernie Langdon
Attn: Managing Agent
P O Box 848
Selma, NC 27576

John S. Connor, Inc.
Attn: Managing Agent
PO Box 791384
Baltimore, MD 21279-1384

Total Quality Logisitics
Attn: Managing Agent
PO Box 634558
Cincinnati, OH 45263-4558

Johnny Hope
Attn: Managing Agent
305 Malpass Farm Lane
Clinton, NC 28328

Scott Farms, Inc.
Attn: Managing Agent
7965-A Simpson Rd.
Lucama, NC 27851

William Gary Adams
Attn: Managing Agent
1075 Adams Road
Benson, NC 27504

John Bean Technologies Corp.
Attn: Managing Agent
7009 Solutions Center
Chicago, IL 60677-7000

Hagan Electronics, Inc.
Attn: Managing Agent
PO Box 17385
Reno, NV 89511

Woody Thornton
Attn: Managing Agent
395 Noah Road
Benson, NC 27504

Rankin Truck Brokers, LLC
Attn: Managing Agent
159 Point South Drive
Yemassee, SC 29945

This the 20th day of April, 2017.

_s/Phyllis W. Hill_
Phyllis W. Hill
Paralegal