**SO ORDERED.**

**SIGNED this 30 day of April, 2018.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| SOUTHERN PRODUCE DISTRIBUTORS, INC. | CASE NO. 18-02010-5-SWH |
| DEBTOR. | |

**INTERIM ORDER ALLOWING DEBTOR'S EMERGENCY MOTION (i) FOR AUTHORIZATION TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (ii) FOR TURNOVER TO THE DEBTOR OF PRE-PETITION AND POST-PETITION FUNDS PREVIOUSLY DEPOSITED OR TO BE DEPOSITED IN THE LOCKBOX ACCOUNT CURRENTLY MAINTAINED WITH WELLS FARGO BANK, and (iii) TO ESTABLISH A POST-PETITION PROCEDURE FOR CUSTOMER PAYMENTS**

**THIS CAUSE** came before the Court for hearing on April 25, 2018 upon the Emergency Motion (i) for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363, (ii) for Turnover to the Debtor of Pre-Petition and Post-Petition Funds Previously Deposited or to be Deposited in the Lockbox Account Currently Maintained with Wells Fargo Bank, and (iii) to Establish a Post-Petition Procedure for Customer Payments (the "Emergency Motion") filed by Southern Produce Distributing, Inc. (the "Debtor") on April 20, 2018, seeking the expedited entry of an order authorizing Debtor to use Cash Collateral. As used herein, the term "Cash Collateral" shall have the meaning set forth in Section 363(a) of the Bankruptcy Code. It appearing to the Court that, on an interim basis, the terms and conditions set forth below are reasonable and appropriate, are in

1

the best interests of the bankruptcy estate and its creditors, and should be approved, that the notice of the Emergency Motion which the Debtor provided to creditors and parties in interest is adequate and proper, and for good cause shown:

**THEREFORE**, based upon the Debtor's Emergency Motion, and the record in this case, the Court hereby makes the following FINDINGS OF FACT and CONCLUSIONS OF LAW (solely for the purpose of entry of this Interim Order):

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The Debtor is a broker, packer and shipper of produce.

3. The Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on April 20, 2018 ("Petition Date").  It continues in possession of its property and continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1108 and 1108.

### Authorization for Debtor's Use of Cash Collateral

4. The Debtor proposes to use its cash collateral for its continued business operations. The budget attached hereto as **Exhibit A** is the Debtor's proposed budget for its continued business operations (hereinafter "Cash Collateral Budget").  The income identified in the Cash Collateral Budget was presented by the Debtor solely for illustration purposes relating to its Emergency Motion and for the Debtor's immediate, interim use of cash collateral.

5. Based upon the Emergency Motion and representations of counsel at the hearing, the entities which appear to have a secured interest in the Debtor's Cash Collateral" are (i) ACF FinCo I LP (hereinafter "Ares"), as successor in interest to FCC, LLC d/b/a First Capital Western Region, LLC, and (ii) Byline Bank (hereinafter "Byline"), as successor in interest to Ridgestone

Bank, a Wisconsin banking corporation. For purposes of this Interim Order and to obtain authorization for immediate, interim use of Cash Collateral, the Debtor acknowledges and does not dispute the validity, priority, and enforceability of the security interests asserted by Ares or Byline or the amounts due such creditors under the applicable loan documents; provided, however, that neither the Debtor nor any other party in interest shall be precluded from reviewing and challenging the validity, priority, and enforceability of the security interests asserted by Ares or Byline in addition to the amounts due such creditors.

6. Section 363(c) of the Bankruptcy Code provides that debtors may use Cash Collateral provided "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(a) of the Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest…." 11 U.S.C. § 363(a).

7. It appears that some of the Debtor's personal property ("Debtor's Personal Property"), specifically its cash, accounts receivable, inventory and other cash equivalents generated from its business operations, may constitute Cash Collateral of Ares and Byline within the meaning of 11 U.S.C. §363(a). It appears that Ares and Byline are the only creditors that may have an interest in the Debtor's Cash Collateral.

8. It appears that the Debtor is indebted to Ares, and as of the Petition Date the Debtor estimates that the total amount of indebtedness owed by it to Ares approximated $7,819,849.00 (hereinafter the "Ares Indebtedness"). The Debtor asserts that the Ares Indebtedness is secured by property with a realizable value approximating $18,360,595.00, which includes third-party real

property identified on the attachment to #2.2 on Schedule D as having an approximate realizable value of $1,400,000.00.

9. It appears that the Debtor is indebted to Byline, and as of the Petition Date the Debtor estimates that the total indebtedness owed by it to Byline approximated $6,751,132.00 (hereinafter the "Byline Indebtedness"). The Debtor asserts that the Byline Indebtedness is secured by property with a realizable value approximating $21,831,595.00 (exclusive of third-party real property identified in the Emergency Motion with an approximate value of $3,000,000.00).

10. The Debtor asserts that both Ares and Byline have significant equity cushions in the collateral securing their respective loans, even taking into account the security interests that both Ares and Byline appear to hold in the Debtor's Personal Property.

11. The Debtor in its Emergency Motion also proposed to grant Ares and Byline replacement liens and security interests in all property, including post-petition accounts receivables and inventory, to the same extent, validity and priority as Ares held prior to the Petition Date on the Ares Indebtedness and as Byline held prior to the Petition Date on the Byline Indebtedness. The Debtor also asserted in its Emergency Motion that it does not project that its operations will materially reduce the existing collateral position of Ares and Byline.

12. The secured positions of both Ares and Byline will be adequately protected on an interim basis by the terms and conditions of this Interim Order.

13. The Debtor anticipates a continued operation of its business with this reorganization, and the continued operation of the Debtor's business is dependent upon its ability to pay wages to its employees and to pay other costs associated with its business operations. The Debtor's estate will suffer immediate and irreparable harm to its operations and ability to

reorganize if the Debtor is unable to obtain authority to use cash collateral on an emergency, interim basis. Debtor should be authorized to use its cash collateral on an interim basis for its post-petition, necessary and reasonable business operating expenses in accordance with the Cash Collateral Budget attached to this Order as **Exhibit A** and the additional terms set forth in this Interim Order. The Debtor has agreed not to use Cash Collateral in excess of the budgeted amounts absent receipt of advance, written authorization for such expenditures from Ares, or by subsequent Court Order, except that the Debtor should be authorized to exceed an individual line item by a maximum of 10% without such prior written approval. The Debtor has agreed to provide Ares the periodic reporting specified in this Interim Order.

14. The requirements of Bankruptcy Rules and the Bankruptcy Code, including without limitation Bankruptcy Rule 4001(d), have been satisfied for the Debtor's interim use of cash collateral and for the provision of adequate protection to Ares and Byline upon the interim terms set forth in this Order.

### Turnover of Pre-Petition and Post-Petition Funds Held in Lockbox Account and Establishment of Procedure for Post-Petition Customer Payments

15. As stated in the Emergency Motion, Ares has established a lockbox account held at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." (hereinafter the "Lockbox Account").

16. The Debtor's customers have made pre-petition payments due the Debtor directly into the Lockbox Account pursuant to a set of Payment Remittance Instructions. The Payment Remittance Instructions set forth how customer payments must be made directly into the Lockbox Account by check (sent by U.S. Mail and Courier/Express Mail) or wire/ACH transfer. Funds from pre-petition customer payments have been deposited into the Lockbox Account every business day, with approximately 60% of the deposits made by electronic wire transfer.

17. The funds deposited pre-petition into the Lockbox Account have been electronically transferred via ACH transfer directly to the Debtor's bank account maintained at PNC Bank, account 3664, for use in Debtor's business operations.

18. Based on the frequency, amount and method of customer payments into the Lockbox Account, with the majority of transfers made by electronic wire transfer, it would be impractical, and potentially detrimental to the Debtor's business operations and its ability to reorganize, if customers were required to begin making post-petition payments directly into an account that is different from the Lockbox Account. It is critical, however, to the Debtor's business operations and its ability to reorganize that the Debtor continue to receive the funds from the Lockbox Account on a daily basis post-petition.

19. Based on the foregoing, it appears to be in the best interests of the Debtor, the creditors and the estate to allow the post-petition customer payment procedure requested in the Emergency Motion on an interim basis. This procedure is as follows:

    a. The Lockbox Account established at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall remain open and continue to be held in the name "ACF FinCo I LP FBO Southern Produce Distributors, Inc.";

    b. Any and all funds that were posted to and existing in the Lockbox Account as of the Petition Date, and any and all funds that had been deposited pre-petition but which posted on or after the Petition Date, shall immediately be turned over to the Debtor by electronic transfer directly into the Debtor-in-Possession account created and maintained by the Debtor;

c. The Payment Remittance Instructions shall remain in effect and continue to apply post-petition, with the customer payments continuing to be made into the Lockbox Account in accordance with the Payment Remittance Instructions;

d. Any and all payments and funds made and deposited into the Lockbox Account post-petition shall be electronically transferred every business day from the Lockbox Account to the Debtor-in-Possession account created and maintained by the Debtor, and the amount of funds transferred to the Debtor-in-Possession account each business day shall equal the amount of funds deposited and posted to the Lockbox Account on the immediately preceding business day;

e. The person or party in whose name the Lockbox Account is held, which as of the date of this Emergency Motion is currently "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall be responsible for electronically transferring the Lockbox Account funds to the Debtor-in-Possession account in accordance with the terms herein;

f. The procedure established for post-petition customer payments as provided herein shall continue to apply unless and until the Court orders otherwise.

20. For the Interim Period covered by this Interim Order, the terms and conditions of this Interim Order provide Ares and Byline adequate protection of any cash collateral interests they may have.

21. Ares and Byline have not agreed to the Debtor's assertions as set forth in paragraphs 8-11 above. For the limited purpose of entry of this Interim Order only, and without prejudice to any relief sought by the Debtor or by Ares and Byline outside of the limited period covered by this Interim Order, and with full reservation of its rights and remedies outside of the interim relief

granted by this Interim Order for such limited period, Ares and Byline have consented to the interim relief granted by this Interim Order.

**WHEREFORE**, based upon the FINDINGS OF FACT and CONCLUSIONS OF LAW, the Court hereby **ORDERS**:

1. Each of the foregoing Findings of Fact and Conclusions of Law is made for the limited purpose of entry of this Interim Order only and without prejudice to any relief sought by the Debtor, Ares, Byline or any other party in interest outside of (a) the limited period covered by this Interim Order or (b) any matter or issue not expressly addressed by the relief granted in this Interim Order. The entry of this Order shall not prejudice any purported claims, liens, interests and/or rights asserted under the Perishable Agricultural Commodities Act, asserted under Section 503 (b)(9) of the Bankruptcy Code, or asserted under applicable North Carolina reclamation law or reclamation law pursuant to the Bankruptcy Code (collectively, the "Unaffected Claims"). Such Unaffected Claims shall likewise not be prejudiced by any actions, or inactions, of any attorneys present at hearing on the Emergency Motion who represent any holders of Unaffected Claims. The rights of the Debtor to object to and challenge any Unaffected Claims shall not be prejudiced by the entry of this Order, and Debtor shall not be precluded from challenging the validity, priority, and enforceability of the same.

2. Ares and Byline are granted post-petition replacement liens on the same assets to which their liens attached pre-petition, to the same extent, and with the same validity and priority as existed on the Petition Date. The liens created hereunder shall be deemed perfected by the entry of this Order without further actions or filing by Ares or Byline. The post-petition liens provided for herein shall survive the term of this Order to the extent the pre-petition liens were valid, perfected, enforceable, and non-avoidable as of the Petition Date. The Debtor does not waive, and

expressly reserves for itself and the bankruptcy estate (including other creditors and any Committee in this proceeding), the right to challenge the validity and priority of the pre-petition liens of Ares and Byline and, derivatively, the post-petition liens provided for hereunder.

3. On an interim basis and through May 29, 2018 (the "Interim Period"), the Debtor shall be and hereby is authorized to use its Cash Collateral for its post-petition, necessary and reasonable business operating expenses in accordance with the Cash Collateral Budget attached to this Interim Order as Exhibit A and the additional terms set forth in this Interim Order. During the Interim Period, the Debtor may use Cash Collateral in excess of the budgeted amounts only upon receipt of advance, written authorization for such expenditures from Ares, or as authorized by subsequent Court Order, except that the Debtor shall be authorized to exceed an individual line item amount by a maximum of 10% without such prior written approval.

4. The Debtor shall have the right to seek additional use of cash collateral beyond the stated terms of this Order and beyond the Interim Period.

5. By the second business day following each week of the Interim Period (i.e., on May 1, 8, 15, and 22, respectively), the Debtor shall deliver to Ares and Byline an electronic reporting showing, for each such week, the Debtor's starting accounts receivable, inventory, and cash balances, and ending accounts receivable, inventory, and cash balances. By the third business day following every other week of the Interim Period (i.e., on May 9 and 23), the Debtor shall provide a "budget to actual" report to Ares and Byline showing the amounts budgeted compared to the actual results for each line item in the Budget. If Ares or Byline reasonably requests information from the Debtor related to the Debtor's use of cash collateral, the Debtor shall attempt in good faith to cooperate with Ares or Byline and make reasonable efforts to respond to such requests in a timely manner, as practicable.

6. The Court also hereby orders the following procedure regarding pre-petition and post-petition customer payments into the Lockbox Account during the Interim Period:

 a. The Lockbox Account established at Wells Fargo Bank, account number 5171, in the name of "ACF FinCo I LP FBO Southern Produce Distributors, Inc." shall remain open and continue to be held in the name "ACF FinCo I LP FBO Southern Produce Distributors, Inc.";

 b. Any and all funds that were posted to and existing in the Lockbox Account as of the Petition Date, and any and all funds that had been deposited pre-petition but which posted on or after the Petition Date, shall immediately be turned over to the Debtor by electronic transfer directly into the Debtor-in-Possession account created and maintained by the Debtor;

 c. The Payment Remittance Instructions shall remain in effect and continue to apply post-petition, with the customer payments continuing to be made into the Lockbox Account in accordance with the Payment Remittance Instructions;

 d. Any and all payments and funds made and deposited into the Lockbox Account post-petition shall be electronically transferred every business day from the Lockbox Account to the Debtor-in-Possession account created and maintained by the Debtor, and the amount of funds transferred to the Debtor-in-Possession account each business day shall equal the amount of funds deposited and posted to the Lockbox Account on the immediately preceding business day;

 e. The person or party in whose name the Lockbox Account is held, which as of the date of this Emergency Motion is currently "ACF FinCo I LP FBO Southern Produce

Distributors, Inc." shall be responsible for electronically transferring the Lockbox Account funds to the Debtor-in-Possession account in accordance with the terms herein;

    f.    The procedure established for post-petition customer payments as provided herein shall continue to apply unless and until the Court orders otherwise.

7.    The Debtor shall maintain one or more Debtor-in-Possession bank accounts, into which it will receive the funds transferred from the Lockbox Account and into which the Debtor will deposit all other cash, checks or other cash items received.

8.    Any party may seek further consideration of the relief granted in this Order or other Cash Collateral issues by filing a request with the Court; provided, however, that a hearing on any such request shall not occur less than three business days' notice to Ares, Byline, the Bankruptcy Administrator, the Debtor, and any Committee.

9.    The Debtor shall serve notice of this Order on all parties entitled to receive the same pursuant to Bankruptcy Rules 1007 and 4001.

10.    Unless additional agreement for the use of cash collateral is reached by the parties and authorized by a further order of this Court prior to May 29, 2018, further hearing on the Emergency Motion and any objections thereto shall occur on May 29, 2018, at 11:00 a.m. at the United States Bankruptcy Courthouse, 2nd Floor Courtroom, 300 Fayetteville Street, Raleigh, North Carolina.

END OF DOCUMENT

**Exhibit A**

2018 SPD Cash Flow Forecast
For the Five Weeks of Apr 22, 2018 through May 26, 2018

| Ending | Wk 4 28-Apr | Wk 1 5-May | Wk 2 12-May | Wk 3 19-May | Wk 4 26-May | Cum |
|---|---|---|---|---|---|---|
| **Cash Balance :** | | | | | | |
| Opening Cash Balance: | 238,716 | 828,392 | 815,579 | 927,524 | 772,148 | |
| Cash from Sales | 630,625 | 740,355 | 766,084 | 542,803 | 622,784 | 3,302,651 |
| **COGS** | | | | | | |
| 5007 Purchases - Produce | | | | | | - |
| 5008 Purchases - Pepper | | 70,200 | 35,200 | 26,400 | 28,600 | 160,400 |
| 5055 Purchases - Raw Pack Out SWPs | | 131,148 | 134,643 | 96,153 | 110,321 | 472,265 |
| 5055 Purchases - Raw Pack Out SWPs New | | 50,000 | 50,000 | 50,000 | 50,000 | 200,000 |
| Purchases - Packaging Mat'ls | | 37,500 | 37,500 | 37,500 | 37,500 | 150,000 |
| 5010.1 Freight & Trucking - SWP Domestic | | 60,000 | 60,000 | 60,000 | 60,000 | 240,000 |
| 5010.2 Freight & Trucking - SWP Int'l | 35,025 | 48,200 | 48,200 | 48,200 | 48,200 | 227,825 |
| 5010.5 Freight & Trucking - Pepper | | 6,062 | 6,224 | 4,445 | 5,100 | 21,831 |
| 5010.7 Freight & Trucking - WH to WH & Other | | 8,602 | 8,751 | 8,107 | 8,712 | 34,172 |
| 5020.2 Salary, Wages & PR Taxes Packing, Pepper | | 68,648 | 66,807 | 64,105 | 82,186 | 281,746 |
| 5230 Auto & Truck | | 8,160 | 8,378 | 5,983 | 6,865 | 29,385 |
| 5360.1 Utilities - Elec & Water | | 12,261 | 1,336 | 33,455 | 1,422 | 48,474 |
| 5360.2 Utilities - Garbage/Trash Removal | | 1,808 | | 404 | | 2,212 |
| 5360.3 Utilities - Fuel | | | 3,013 | 4,782 | | 7,795 |
| 5360.7 Utilities - Propane | | | 10,037 | | | 10,037 |
| 5632 Rent - Storage | | 36,750 | | | | 36,750 |
| 5635 Equipment Lease/Rental | | 40,957 | | 10,891 | | 51,848 |
| 5660 Repairs & Maintenance | | 11,547 | 13,758 | 11,652 | 11,444 | 48,401 |
| 5730 Supplies | | 12,796 | 15,206 | 14,953 | 8,142 | 51,097 |
| 5732 Pallets | | 3,947 | 5,732 | 4,251 | 1,170 | 15,100 |
| **Total Cash for COGS** | 35,025 | 608,586 | 504,785 | 481,281 | 459,661 | 2,089,338 |
| **Expenses** | | | | | | |
| 7000 Advertising | | 660 | 678 | 484 | 555 | 2,378 |
| 7010 Sales Commissions | | 250 | 250 | 250 | 250 | 1,000 |
| 7030 Auto | | 1,380 | 1,400 | 1,013 | 1,120 | 4,913 |
| 7125 Bank Charges | | 2,850 | 745 | 875 | 975 | 5,445 |
| 7150 Flowers & Gifts | | 50 | 50 | 50 | 50 | 200 |
| 7170 Contributions | | - | - | 50 | - | 50 |
| 7240 Dues & Subscriptions (iTrade) | | 3,000 | 450 | 625 | 550 | 4,625 |

## 2018 SPD Cash Flow Forecast
### For the Five Weeks of Apr 22, 2018 through May 26, 2018

| Ending | Wk 4<br>28-Apr | Wk 1<br>5-May | Wk 2<br>12-May | Wk 3<br>19-May | Wk 4<br>26-May | Cum |
|---|---|---|---|---|---|---|
| 7255 Employee Benefits - 401K | | 2,487 | 2,408 | 2,404 | 2,505 | 9,804 |
| 7330 General & Miscellaneous (Security) | | 2,085 | 2,100 | 1,520 | 1,750 | 7,455 |
| 7380 Insurance - Medical & Life, Disab, AFLAC | | | 6,656 | 193 | - | 6,849 |
| 7390 Insurance - General | | 3,000 | 10,517 | | 4,387 | 17,904 |
| 7510 Office Expense | | 1,953 | 2,005 | 1,432 | 1,643 | 7,033 |
| 7660 Repairs & Maintenance | | - | 400 | - | 325 | 725 |
| 7690 Salaries, Wages & PR Taxes | | 29,057 | 29,335 | 30,119 | 30,981 | 119,492 |
| 7720 Contract Labor | | 313 | 276 | 197 | 225 | 1,011 |
| 7740 Computer | | 5,200 | 450 | 1,125 | 975 | 7,750 |
| 7750 Telephone - Cell | | 1,358 | 1,100 | 1,072 | 1,833 | 5,363 |
| 7780.1 T&E - Travel | | 1,455 | 1,494 | 1,067 | 1,224 | 5,239 |
| 7780.3 T&E - Meals & Ent Emp | | 125 | 310 | 150 | 205 | 790 |
| 7780.4 T&E - Meals & Ent Non-Emp | | 100 | 160 | 170 | 60 | 490 |
| 7900 Other Taxes & Licenses | | 1,680 | | | 0 | 1,680 |
| Total Cash for G&A Expenses | - | 57,004 | 60,784 | 42,796 | 49,613 | 210,197 |
| Other Income/Expenses | | | | | | |
| Total Cash from Other Income | - | - | - | - | - | - |
| Other Expenses | | | | | | |
| 8043 Farming Expenses | | | | | | |
| Fertilizer/Chemicals | | 69,600 | 69,600 | 69,600 | 69,600 | 278,400 |
| Fuel | | 1,265 | 1,265 | 1,265 | 1,265 | 5,060 |
| Equipment R&M | | | | 2,000 | | 2,000 |
| Farming Salaries & Wages | | 6,394 | 6,690 | 6,606 | 6,626 | 26,316 |
| H2A - Visa Labor | 5,925 | 10,319 | 11,015 | 94,631 | 98,539 | 220,429 |
| Total Cash Other Expenses | 5,925 | 87,578 | 88,570 | 174,102 | 176,030 | 532,205 |
| Net Cash - Other Income/Expenses | 5,925 | 87,578 | 88,570 | 174,102 | 176,030 | 532,205 |
| Net Cash per Week (+/-) | 589,675 | (12,813) | 111,945 | (155,375) | (62,521) | 470,911 |
| Ending Cash Balance | 828,392 | 815,579 | 927,524 | 772,148 | 709,628 | 709,628 |

Salary, Wages & PR Taxes          FlexPay draft against our operating account