**SO ORDERED.**

**SIGNED this 8 day of February, 2019.**

***Stephani W. Humrickhouse***
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

SOUTHERN PRODUCE   CASE NO. 18-02010--5-SWH
DISTRIBUTORS, INC.,

                                                                                   CHAPTER 11

      DEBTOR

ORDER ALLOWING OBJECTION TO PACA CLAIM
OF KORNEGAY FAMILY PRODUCE, LLC

The matter before the court is the Objection to PACA Claim of Kornegay Family Produce, LLC filed by the debtor on October 16, 2018, Dkt. 279 (the "Objection"). A response to the Objection was filed by Kornegay Family Produce, LLC ("Kornegay") on November 15, 2018, Dkt. 320 (the "Response"). A hearing was held in Raleigh, North Carolina on December 6, 2018, at which the court took the matter under advisement. After a review of the case record and consideration of the parties' arguments, the Objection will be allowed.

BACKGROUND

Southern Produce Distributors, Inc. (the "debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 20, 2018 (the "Petition Date"). The court issued a

Notice of Chapter 11 Bankruptcy Case on the Petition Date, Dkt. 2, which established a deadline of August 20, 2018 for the filing of claims by non-governmental creditors in this case (the "Claims Bar Deadline").

The debtor is a sweet potato grower, packer, and shipper based in Faison, North Carolina. As part of its business operation, the debtor regularly purchases sweet potatoes from local growers, packs the purchased potatoes, and sells and ships them to wholesale and retail vendors. Some of the growers who sell potatoes to the debtor are licensed produce sellers pursuant to the Perishable Agricultural Commodities Act ("PACA"), which governs the sale of produce in the United States and is codified at 7 U.S.C. §§ 499a–499t. Under PACA, upon the sale of produce, a statutory trust is imposed upon the purchased "perishable agricultural commodities" and all receivables and proceeds thereof. However, because the debtor maintains that it does not have numerous PACA claimants, a separate PACA-specific claims process was not necessary or implemented.

On July 30, 2018, Kornegay filed Proof of Claim No. 58 asserting a PACA claim in the amount of $52,184.29. An Amended Proof of Claim No. 58-2 was filed on November 15, 2018 asserting a PACA claim in the amount of $38,243.16. The sales of potatoes underlying Kornegay's claim occurred between March 23, 2018 and April 12, 2018.

The Amended Proof of Claim is comprised of the following documents:

1. A Proof of Claim form which indicates a PACA claim in the amount of $38,243.16;

2. Declaration of Kim Kornegay-LeQuire in Support of the PACA Trust Claim of Kornegay Family Produce, LLC, dated May 30, 2018 ("Initial Declaration");

3. A PACA Search Certification regarding Kornegay's PACA license;

2

4. A PACA Search Certification regarding Southern Produce's PACA license;

5. A chart summarizing the Kornegay claim (the "Summary Chart");

6. Copies of Invoice Nos. 19070, 18884, 19082, 19131 and 19153;

7. Second Declaration of Kim Kornegay-LeQuire in Support of the PACA Trust Claim of Kornegay Family Produce, LLC, dated November 14, 2018 ("Second Declaration"); and,

8. Copies of Invoice Nos. 19070, 18884, 19082, 19131 and 19153 with corresponding bills of lading.

Kornegay alleges, and the debtor does not dispute, that the parties orally agreed to extend the applicable payment term from ten days to thirty days prior to the 2018 transactions. Following each individual transaction, Kornegay issued a separate invoice to the debtor (collectively, "Invoices"). The Invoices stated that the applicable payment term was "Net 30," contained a notice of reservation of PACA rights as prescribed by 7 U.S.C. § 499e(c)(4), and provided that "past due invoices are subject to 1.5% interest per month."

At the December 6, 2018 hearing, Kornegay conceded that Invoice No. 18884 in the amount of $426.00 should not be allowed as part of its PACA claim. Therefore, remaining for the court's determination is the PACA eligibility of 4 invoices, totaling $37,720.00:

(1) Invoice No. 19070 in the amount of $5,224.16, which lists a ship date of March 23, 2018, and an invoice date of March 30, 2018;

(2) Invoice No. 19082 in the amount of $7,000.00, which lists a ship date of March 26, 2018, and an invoice date of March 30, 2018;

3

(3) Invoice No. 19131 in the amount of $10,240.00, which lists a ship date of April 6, 2018, and an invoice date of April 13, 2018; and,

(4) Invoice No. 19153 in the amount of $10,240, which lists a ship date of April 12, 2018, and an invoice date of April 25, 2018.

All of the four invoices note the words "Net 30" in two places: in the "Terms" block and in the "Comments" block. All of the four invoices recite the required PACA notice language. The debtor does not dispute the ship dates, the adequacy of the PACA language or the timeliness of the PACA notices. The sole issue before the court is whether the payment terms render the invoices PACA ineligible.

Kornegay contends that the Disputed Invoices are PACA eligible because: the parties orally agreed to a 30-day payment term, which is within the statutory limit and that the payment term language on the invoices is PACA compliant. To the contrary, the debtor asserts that because the invoice dates are after the shipping dates, a net 30 payment term on its face must exceed the statutorily allowed payment term, which can not exceed 30 days from the shipping date.[1]

## DISCUSSION

A. PACA, Generally

PACA, enacted by Congress in 1930, exists "to encourage fair trading practices in the marketing of perishable commodities by suppressing unfair and fraudulent business practices in marketing of fresh and frozen fruits and vegetables . . . and providing for collecting damages from any buyer or seller who fails to live up to his contractual obligations." H.R. Rep. No. 543, 98th

---

[1] The parties do not dispute, and in fact, Ms. Kornegay's Second Declaration supports a find that the shipping date is also the acceptance date for the produce. Sec. Declar. && 4,5,6.

4

Cong., 2d Sess. 3 (1984).  To this end, the statute creates, "immediately upon a delivery [of produce], a nonsegregated 'floating' trust in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities." *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003).  PACA requires a "produce dealer [to hold] produce-related assets as a fiduciary in statutory trust until full payment is made to the seller." *Bowlin & Son, Inc. v. San Joaquin Food Serv. (In re San Joaquin Food Serv.)*, 958 F.2d 938, 939 (9th Cir. 1992).

PACA is remedial in nature.  *See United Potato Co., Inc. v. Burghard & Sons, Inc.*, 18 F.Supp.2d 894, 899 (N.D. Ill. 1998) (explaining that "PACA was meant to add a remedy beyond those already provided by the states and other statutes").  Where a seller is not promptly paid for the produce it delivers, the floating trust imposed by PACA "gives sellers of perishable agricultural commodities a right of recovery that is superior to the right of all other creditors, including secured creditors." *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 595 (4th Cir. 2010); *see also In re Superior Tomato-Avocado, Ltd.*, 481 B.R. 866, 869 (Bankr. W.D. Tex. 2012) (citations omitted) (explaining that PACA effectively grants a produce seller "a 'superpriority' right [to payment] that trumps the rights of a buyer's other secured and unsecured creditors"); *In re Yarnell's Ice Cream Co., Inc.*, 469 B.R. 823, 827 (Bankr. E.D. Ark. 2012) (noting that "sellers protected by PACA are . . . elevated to a priority position above secured creditors").

In exchange for the tremendous protection it affords produce sellers, PACA demands strict compliance with the Act's statutory provisions and associated regulations promulgated by the United States Department of Agriculture ("USDA").  *See Paris Foods Corp. v. Foresite Foods, Inc.*, 278 Fed. Appx. 873, 874 (11th Cir. 2008) ("Strict compliance with PACA is required to

5

preserve one's rights in a PACA statutory trust"); *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y.*, 362 F.3d 33, 42 (2d Cir. 2004) ("Strict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision"); *In re John DeFrancesco & Sons, Inc.*, 114 B.R. 335, 338 (D. Mass. 1990) ("in order to preserve its PACA trust benefits . . . [a seller] must prove that it strictly complied with all the necessary statutory requirements").

Importantly, PACA prescribes permissible payment terms between a produce seller and a produce buyer. Because the statute is intended to protect the sale of produce on a short-term credit basis, the default payment period, contained in regulations promulgated by the Secretary of Agriculture, is ten days. 7 C.F.R. § 46.2(aa)(5). However, the maximum time for payment to which a seller can agree in writing and still be eligible for PACA protection is thirty days after acceptance of the commodities. 7 C.F.R. § 46.46(e)(1)-(2).

The statute also requires a produce seller to timely notify a produce buyer of its intent to preserve PACA trust rights. 7 U.S.C. § 499e(c)(3)–(4). The regulations set forth, in detail, the methods by which a seller may submit such a notice and the required contents of the notice. *See* 7 C.F.R. § 46.46(f). A notice to preserve PACA rights must be sent "within thirty calendar days" after the expiration of the payment term prescribed by 7 C.F.R. § 46.2(aa)(5) or the expiration of the payment term agreed to by the parties in writing. 7 U.S.C. § 499e(c)(3). To summarize, there are two essential requirements for preservation of PACA protection: (1) a timely notice must be given and (2) payment terms may not exceed thirty days from the acceptance of the produce. Only the second requirement is implicated herein.[2]

---

[2] It matters not whether the court uses the 10 day default period or the 30 day extended period, cf. *In re Wayne Bailey, Inc.*, Case No. 18-00284-5-SWH (Bankr. E.D.N.C. Feb. 1, 2019) (holding that oral agreement should not be used to calculate notice period)— notice was timely sent.

6

As previously stated, Kornegay maintains that the court should give no weight to the oral agreement of the parties to extend the payment term to thirty days and use the 10 day default period to calculate the eligibility of its PACA notice. The court agrees. *See In re Wayne Bailey, Inc.*, Case No. 18-00284-5-SWH at Dkt. 821 (Bankr. E.D.N.C. Feb. 1, 2019). But the inquiry does not end there. "The final question for the court to consider is whether a pre-default notation on an invoice setting forth a due date in excess of thirty days from the receipt and acceptance of the sweet potatoes invalidates PACA eligibility." *See In re Wayne Bailey, Inc.*, Case No. 18-00284-5-SWH at Dkt. 650 (Bankr. E.D.N.C. Sept. 28, 2018).

There is no pre-transaction written agreement modifying the statutory payment terms and absent contradictory terms on the invoice notice, the court would imply the 10 day statutory term. However, the invoices at issue do, in fact, contain contradictory payment terms. Kornegay argues that the payment term "Net 30" noted on the invoices means "net 30 days after shipment." To support that statement, at the hearing, Kornegay pointed the court to the fact that one of the "net 30" notations is contained in the same box as the shipment date information. Furthermore, paragraph 7 of Ms. Kornegay's Initial Declaration filed May 30, 2018, states that "[t]he sales transactions between Kornegay and Debtor are based on "net 30" payment terms requiring payment thirty (30) days after the day on which the produce was accepted as provided for in PACA Regulations, 7 C.F.R. ▪ 46.2(aa)(5) . . . ". Init. Declar. & 7. But, the Initial Declaration[3] also refers to Exhibit C which is the Summary Chart attached to the Amended Proof of Claim and goes on, in paragraph 8, to explain that the column entitled "Date of Invoice or Shipment" "refers to the

---

[3] The court notes that the Second Declaration attached to the Amended Proof of Claim supplements, but does not replace, the Initial Declaration also attached to the Amended Proof of Claim.

7

date which begins the payment term between the parties." The relevant portions of the chart are set out below:

| Invoice No. | Date of Invoice or Shipment | Invoice Amount |
|---|---|---|
| 19070 | 3/30/2018 | $ 10,240.00 |
| 19082 | 3/30/2018 | $ 7,000.00 |
| 19131 | 4/13/2018 | $ 10,240.00 |
| 19153 | 4/25/2018 | $ 10,240.00 |

If the thirty day period indicated on the invoices begins on the dates set forth on the chart above for each shipment, then the payment terms, by definition, exceed thirty days from the date of acceptance of the produce such that they invalidate the PACA eligibility of the Disputed Invoices, as is shown on the chart below:

| Invoice No. | Acceptance Date | + 30 | Chart Date | +30 |
|---|---|---|---|---|
| 19070 | 3/23/2018 | 4/22/2018 | 3/30/2018 | 4/29/2018 |
| 19082 | 3/26/2018 | 4/25/2018 | 3/30/2018 | 4/29/2018 |
| 19131 | 4/6/2018 | 5/6/2018 | 4/13/2018 | 5/13/2018 |
| 19153 | 4/12/2018 | 5/12/2018 | 4/25/2018 | 5/25/2018 |

The inclusion of payment terms on an invoice which exceed statutorily allowed payment terms invalidates PACA protection. *See Overton Distributors, Inc. v Heritage Bank*, 340 F.3d 361 (6th Cir. 2003); *Belair Produce Co., Inc. v Mixt Greens, Inc.*, No. ELH-12-299, 2012 WL 5199421 (D. Md. Oct. 18, 2012).

8

Here, in essence, the proof of claim filed by Kornegay, considered with all attachments, on its face, displays a payment term in excess of 30 days from the date of acceptance of the produce and therefore cannot be afforded PACA protection.

## CONCLUSION

Based on the foregoing, the debtor's Objection to the PACA Claim of Kornegay is ALLOWED. Kornegay shall have an allowed general unsecured claim in the amount of $37,720.00.

**END OF DOCUMENT**